Lesley D. POPOVITS, f/k/a Lesley D. Gustafson, Plaintiff,

v.

CIRCUIT CITY STORES, INC., Defendant.

No. 97 C 5188.

United States District Court, N.D. Illinois, Eastern Division.

June 2, 1998.

---

Donald G. Weiland, Chicago, IL, for Plaintiff.

Patricia C. Slovak, Brittain Sledz Morris & Slovak, Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior Judge.

Lesley Popovits, f/k/a Lesley Gustafson ("Gustafson"[1]) has sued her ex-employer Circuit City Stores, Inc. ("Circuit City") for its alleged violation of the Consolidated Omnibus Budget Reconciliation Act ("COBRA"[2]) in failing to afford Gustafson continued health insurance coverage after her termination. Both sides have moved for summary judgment under Fed.R.Civ.P. ("Rule") 56, with their simultaneous filings in support of their respective motions having generated simultaneous responses. For the reasons stated in this memorandum opinion and order, Gustafson's motion is denied while Circuit City's is granted, and this action is dismissed with prejudice.

### Summary Judgment Standards

Familiar Rule 56 principles impose on a party seeking summary judgment the burden of establishing the lack of a genuine issue of material fact (*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). For that purpose this Court must "read[ ] the record in the light most favorable to the non-moving party," although it "is not required to draw unreasonable inferences from the evidence" (*St. Louis N. Joint Venture v. P & L Enters., Inc.*, 116

F.3d 262, 265 n. 2 (7th Cir.1997)). Where as here cross-motions for summary judgment are involved, it is necessary to adopt a dual perspective—one that this Court has often described as Janus-like—that sometimes forces the denial of both motions.

Here no such risk exists, for the operative facts are really not in dispute. Instead the key issue comes down to the meaning of documents that Circuit City sent to Gustafson telling her of her COBRA rights and what she had to do to exercise them—and that issue really poses a question of law for this Court.

### Facts

Gustafson left Circuit City's employ as the result of conduct that Circuit City considered "gross misconduct" (a characterization that, if accurate, would have disqualified her for continued health coverage that COBRA otherwise guarantees (Sections 1161(a) and 1163(2); *Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 680 (7th Cir.1997))). When Gustafson then pursued a successful administrative appeal from the initial denial of unemployment compensation benefits that she had sought, Circuit City notified her of her right to continued coverage. Then after Gustafson sent Circuit City a timely confirmation that she did want to continue her coverage, Circuit City notified her of what had to be done for that purpose. Because Gustafson admits having received the notifications from Circuit City, and because she never made or tendered *any* premium payments after such notifications, the only question is whether the Circuit City notices complied with its obligations under COBRA.[3]

### Compliance with COBRA's Requirements

After Circuit City had sent Gustafson a December 15, 1995 notification of her right to

---

**1.** That former name is used in this opinion because plaintiff was known that way throughout the period relevant to this case, and all of the documents therefore read that way.

**2.** COBRA is the portion of the Employee Retirement Income Security Act ("ERISA") that provides for a terminated employee's continued participation in employer-provided group health plan coverage for up to 18 months after termination, conditioned on the ex-employee's payment of the required premiums. Its obvious purpose is to avoid an interruption in often-vital

health insurance coverage while the ex-employee has the opportunity to arrange for new group coverage or individual coverage on his or her own. All citations to COBRA will take the form "Section—," referring to the section numbering within Title 29 rather than to the internal section numbering of either statute.

**3.** It makes more sense to set out the relevant content of Circuit City's notices as a part of the substantive discussion regarding their meaning. Hence the *Facts* section of this opinion stops here.

elect continued insurance coverage (Ex. 1 to this opinion), she returned a COBRA election form to Circuit City on February 6, 1996 (Ex. 2 to this Opinion is the February 1, 1996 forwarding letter from Gustafson's lawyer to Circuit City that enclosed the election form). That caused Gustafson's initial premium payment to be due on March 23, 1996, 45 days after she had made her election. In this instance the matter was more complicated than in the usual situation in which a departing employee is notified about COBRA eligibility either before, at or immediately after termination: Here Circuit City's initial determination that would have disqualified Gustafson for COBRA-required coverage, followed much later by its change of position in light of the administrative order reversing the original denial of unemployment compensation benefits, meant that Gustafson's health care coverage under COBRA's directive could be retroactive for part or all of a very extended timetable.

As already stated, Gustafson's election form was returned to Circuit City by her lawyer—the same lawyer who now represents her. So Gustafson cannot in good conscience advance any possible complaint that a layperson might assert that she could not have been expected to understand any Circuit City document because it was legal in form. And in fact she has not done so, instead proffering an argument that attributes an illogical and unpersuasive meaning to Circuit City's notification.

As a legally irrelevant matter, Gustafson's affidavit in support of her Rule 56 motion complains vigorously that Circuit City was wrong in discharging her (Aff.¶¶ 4–14), a to-tal red herring in the context of her COBRA claim.[4] Rather the only question is whether Circuit City ultimately offered Gustafson the benefits assured by COBRA—and on that score her claim is that her reason for not paying *anything* is because Circuit City's February 9, 1996 notice (Ex. 3 to this opinion) demanded $2,572.02 for the entire 18–month continuation period available through COBRA,[5] while she needed only 7 months' gap coverage costing less than half that amount (she had obtained other medical coverage after February 1995).

That argument by Gustafson is a sure loser, because it employs a spotlight that focuses only on the first two sentences of this paragraph of the February 9, 1996 letter, while attaching no meaning at all to the third sentence:

> THERE IS NO EXTENSION OF THE INITIAL PAYMENT DUE DATE. You may pay the Initial Payment in installments; however, the full amount must be paid by the Initial Payment due date. If the full Initial Payment is not made by the due date, coverage will be continued through the date payment was made.

It should be recalled that because of the delay in Circuit City's offer of COBRA-dictated coverage occasioned by the situation regarding its stated reason for Gustafson's termination, the February 9, 1996 letter was actually sent out *after* the entire 18–month period of Gustafson's COBRA-assured coverage had already run out (as Ex. 3 accurately stated, that had taken place on January 31, 1996, nine days *before* the February 9 letter was sent). So it had to be obvious to any objective reader that the letter was one that must be read through a common-sense lens.[6]

To any reasonable reader, the plain message of the ignored third sentence is that

---

**4.** Circuit City's charges of misconduct on Gustafson's part are plainly a burr under her saddle. They obviously account for her Complaint's demand for future lost benefits, for an unspecified $50,000 in damages and for punitive damages— all of those remedies being unavailable under COBRA specifically or ERISA in general.

**5.** This Court has not been able to reconcile that $2,572.02 figure (amounting to $142.89 per month) with the per-month figures specified in Circuit City's Ex. 3 notice. That mystery need not be solved, however, in ruling on the question of law addressed in this opinion.

**6.** As a prime example, the paragraph that followed the one just quoted in the text said, after the quoted paragraph's reference to the initial payment:

> Thereafter, the regular monthly premium of $161.48 is due on the first day of each month. That of course could have no meaning at all in a situation where the 18 months had already elapsed—there could be no "thereafter," nor could there be any occasion for a "regular monthly premium" that would be "due on the first day of each month."

Gustafson's payment of *less* than the "full Initial Payment" would have given her continued coverage through the date for which she *did* make payment at the specified rate of $161.48 per month. And that sensible reading is buttressed by the letter's earlier statement that coverage would be effective from August 1, 1994 and would continue until the *earlier* of several dates, one of which was Gustafson's becoming covered under some other health plan. It is surely absurd for Gustafson to contend that following a statement that her medical and dental insurance called for an aggregate payment of $161.48 a month, she would be required to pay more than $2,500 even if she had become covered under another health plan one or two months after leaving Circuit City's employ.

Suppose however that Gustafson or her lawyer or both were in doubt on that score.

7. In that respect it should be noted that both Ex. 1 and Ex. 3 concluded with this unequivocal invitation:

> Please contact the COBRA Administrator at (800) 627–2274 ext. 6554 if you have any questions about continued coverage.

8. Rule 56(e) requires that any affidavit in support of a summary judgment motion "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Despite the precision of that requirement, Gustafson Aff. ¶ 48 says only this after stating her conclusion that she had to pay the full $2,572.02 in all event (even though she did not need 18 months' coverage):

> When Affiant and her attorney attempted to discuss Defendant's demand for payment of premiums for months in which Affiant did not need coverage, Defendant refused to discuss the matter with Plaintiff's attorney. (Exhibit G, handwritten note of 3/21/96, February 9, 1996 letter).

That assertion is remarkable primarily for its total lack of identification of any "attempt[ ] to discuss" the matter, either by Gustafson (who

It would have taken no effort at all for them to inquire of Circuit City to clear up their doubts [7]—but on the only admissible evidence that has been submitted on that score in conjunction with the Rule 56 motions (Aff. ¶ 10 from Nancy Brooking, who was Circuit City's Senior Benefits Analyst at the time, having responsibility for the administration of benefits to current and former Circuit City employees), *neither* of them did so.[8] Instead no inquiry was made, no payment at all was made or tendered, and they resorted instead to this groundless lawsuit.

### Conclusion

There is no genuine issue of material fact in this case, and Circuit City is entitled to a judgment as a matter of law. As stated at the outset, Gustafson's Rule 56 motion must be and is denied, Circuit City's cross-motion must be and is granted, and this action is dismissed with prejudice.

offers no evidence on that score in her affidavit) or by her lawyer (from whom no affidavit has been forthcoming). And the documentary reference in Gustafson Aff. ¶ 48 is to Brooking's handwritten notation on her retained copy of the February 9, 1996 letter:

> 3/21/96
> Per Holly M.—We should make no contact w/her attorney.

As to that, Brooking Aff. ¶ 7 explains her notation:

> Ms. Popovits' premium payment was due on or about March 23, 1996. As that date drew near and I had received no payment from Ms. Popovits, I inquired of Circuit City human resources management whether I should contact Ms. Popovits' attorney. I was told I should not do so and I noted that instruction on my copy of my February 9th letter (Exhibit D).

In short, Gustafson's fuzzily nonspecific statement is not entitled to be credited for Rule 56 purposes—though it should be added that she would be no better off as a matter of law if her statement *were* taken into account.

CIR...

Cir...
935...
P...

December 15, 1995

Lesley Gustafson
7971 Woodridge Drive, #202
Woodridge, IL 60517

Dear Ms. Gustafson and Family:

Your participation under the Circuit City Stores Group Health Care Plans terminated on July 31, 1994; however, due to COBRA (federal legislation), you and/or your covered dependent(s) may elect to continue your benefits for a maximum of 18 months (or 36 months if you are a dependent losing eligibility).

If you or a covered dependent were totally disabled within the meaning of the Social Security Act on July 22, 1994, such individual may continue coverage for up to 29 months. Such individual must inform Circuit City Stores's COBRA Administrator of his/her eligibility for the extended coverage before the end of the 18 month COBRA continuation period, and within 60 days of the date Social Security determines that individual to be disabled. After the initial 18 months of COBRA coverage, continued coverage for the disabled individual will be at an increased cost. Extended coverage terminates in the month that begins 30 days after Social Security determines the disability has ended or 29 months from July 22, 1994, whichever is earlier.

You may continue coverage under the plan(s) in which you were enrolled on the above date, and only for your dependents who were covered at that time. However, you may add eligible dependents at Annual Open Enrollment (July 1) or within 31 days of a change in family status. Refer to the medical and/or dental Summary Plan Description(s) for details. You may elect to continue the coverage for which you are eligible, or your covered dependents may elect to continue the coverage if you do not.

You have until February 12, 1996 to notify Circuit City Store's COBRA Administrator of your election to continue your coverage. If you elect to continue, upon receipt of your initial payment, your coverage will be reinstated retroactively to July 31, 1994. Consequently, any claims for services after that date that may have been denied, may then be refiled. If you so elect, your coverage will continue until the earlier of the date:
1. of the expiration of the covered individual(s) maximum allowed period of continuation;
2. you become covered under another group health care plan (except if the new group plan limits or excludes benefits for you or one of your dependents due to a pre-existing condition of such individual, then only that individual may continue COBRA coverage until the earlier of termination of the pre-existing condition limitation under the new plan or the termination of the right to continue COBRA coverage);

EX. 1

3. or your dependent(s) become entitled to Medicare; (NOTE: If entitled to Medicare and enrolled in the dental plan, you can only continue your dental coverage under COBRA.)
4. which is the 31st day after the due date, if payment is not made for such due date;
5. Circuit City Stores no longer provides any group health care coverage to any of its Associates.

If you elect to continue coverage, a schedule of required monthly payments will be sent to you. If the monthly cost changes at any time, you will be notified of the payment amount and sent a new schedule. Payment for the interim period between your coverage termination date, as noted above, and your first scheduled monthly payment must be received within 45 days of the date you sign the attached Election Form. If this Initial Payment is not made by then, or any subsequent payment is not received by the 31st day after the date due, your coverage will be discontinued as of the last day through which you made payment.

Please Note: If you move, you may no longer be eligible for the plan(s) in which you were enrolled at the time of your coverage termination. In this case, you would be would be eligible to enroll in the plan available in your new area.

Please contact the COBRA Administrator at (800) 627-2274 ext. 6554 if you have any questions about continued coverage.

Sincerely,

Nancy B. Brooking
Group Benefits Analyst

## ELECTION FORM

The following coverage option(s) are available to you and/or your eligible dependents. Please complte this form by CIRCLING the below option(s) you and/or your eligible dependent wish to continue. After SIGNING and DATING this form, please return this election form to

**CIRCUIT CITY STORES, INC.**
9960 Mayland Drive
Richmond, VA 23233
ATTN: COBRA BENEFITS
Deep Run II, 2nd Fiuor

### COVERAGE OPTIONS AND MONTHLY COST

|  | SELF ONLY | EMP+ CHILD | EMP + SPOUSE |
|---|---|---|---|
| MEDICAL | M1 146.68 | M2 251.98 | M3 337.07 |
| DENTAL | D1 14.80 | D2 30.19 | D2 30.19 |

IF ELIGIBLE DEPENDENTS ARE ELECTING SEPARATELY FROM ASSOCIATE:

|  | SELF ONLY | EMP÷ CHILD | EMP + SPOUSE |
|---|---|---|---|
| MEDICAL | M1 146.68 | M2 251.98 | M3 337.07 |
| DENTAL | D1 14.80 | D2 30.19 | D2 30.19 |

DEPENDENT INFORMATION:

Please complete the following information for any dependents:

| NAME | D.O.B. | RELATION | SOCIAL SECURITY # |
|---|---|---|---|
| 1. |  |  |  |
| 2. |  |  |  |

I have read and understand this notice and am aware of my rig　　　　g my option to continued under the plan(s) specified herein.

Leslie Gustafson (signature) 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　　　　　　　Date

Dependent Signature (if electing separately)　　　　　　Date

**DONALD G. WEILAND**

Attorney At Law
135 SOUTH LaSALLE STREET, SUITE 2140
CHICAGO, ILLINOIS 60603
(312) 782-1403
FAX (312) 782-3674

February 1, 1996

Circuit City Stores, Inc.
9960 Mayland Drive
Richmond, VA 23233

Re: Lesley Gustafson

Attn: COBRA Benefits, Deep Run II, 2nd Floor

     Enclosed is the COBRA election form of my client, Lesley. Gustafson. I have previously discussed with your company my client's outstanding medical bills for the period covered by her COBRA election. Please let me know the process to present those bills.

     Thank you for your prompt attention and consideration in this matter. If you have any questions, please call.

Sincerely,

Donald G. Weiland

DGW/gm
Encl.

cc: Lesley Gustafson

EX. 2

**EXHIBIT**

B

RECEIVED
FEB 0 6 1996

BENEFITS

February 9, 1996

Lesley Gustafson
7971 WOODRIDGE DRIVE #202
WOODRIDGE, IL 60517

Dear Ms. Gustafson:

We are in receipt of your election form to continue the following coverage under the Circuit City Stores, Inc. Group Health Care Plans(s):

| | |
|---|---|
| Self Only Medical Insurance | $ 146.68 |
| Self Only Dental Insurance | $ 14.80 |

Upon receipt of your initial payment, your coverage will be effective from August 1, 1994 and will continue until the earlier of the date:

1.  of the expiration of the covered individual(s) maximum allowed period of continuation (January 31, 1996)
2.  you become covered under any other health plan (except if the new plan limits or excludes benefits for you or one of your covered dependents due to a pre-existing condition of such individual, then only that individual may continue COBRA coverage until the earlier of the termination of the pre-existing condition limitation under the new plan or the termination of the right to continue COBRA coverage);
3.  you or your covered dependent(s) become entitled to Medicare co..rage;
4.  which is the 31st day after the due date, if payment is not made for such due date;
5.  Circuit City Stores no longer provides any group health care coverage to any of its Associates.

THERE IS NO EXTENSION OF THE INITIAL PAYMENT DUE DATE. You may pay the Initial Payment in installments; however, the full amount must be paid by the Initial Payment due date. If the full Initial Payment is not made by the due date, coverage will be continued through the date payment was made.

PLEASE NOTE: Your carrier will not be notified that you are covered for any month, until payment has been received for that month.

Thereafter, the regular monthly premium of $161.48 is due on the first day of each month. The due date for each month's premium will appear on the applicable coupon. If any monthly payment is not RECEIVED BY THE LAST DAY OF THE MONTH, YOUR COVERAGE WILL BE CANCELLED AS OF THE LAST MONTH THROUGH WHICH YOU MADE PAYMENT. Prompt payment is required, since late payment will cause your coverage to be cancelled. Once cancelled, your coverage cannot be reinstated.

If premiums are changed in the future, you will be notified of any resulting change in your required payments. Please make your

EX 3

EXHIBIT

C

premium check payable to Circuit City Stores, Inc. and print your social security number on all checks, so that your account can be credited properly.

PLEASE SEND YOUR PAYMENTS TO:

Circuit City Stores, Inc.
9960 Mayland Drive
Richmond, Virginia 23233
ATTN: COBRA BENEFITS
Deep Run II, 2nd Floor

PLAN REQUIREMENTS

1.  Enclosed with this letter please find a series of payment coupons. Each month you are required to cut off the applicable payment coupon, complete the information requested, sign where indicated and send it to Circuit City Stores COBRA Administrator with your payment.

2.  The Initial Payment of $2572.02 must be received by the Circuit City Stores COBRA Administrator on March 23, 1996. THERE IS NO EXTENSION OF THIS INITIAL PAYMENT DUE DATE.

3.  Subsequent regular monthly payments must be received by the last day of month after due date or cancellation will result.

4.  Coverage will terminate if your check is returned for insufficient funds on the last day of month after due date.

5.  Please make your check payable to CIRCUIT CITY STORES, INC.

6.  Please indicate any change of address along with your monthly payment.

Please contact COBRA Administrator at (800) 627-2274, ext. 6554 if you have questions about continued coverage.

Sincerely,

Circuit City Stores, Inc.
COBRA Administrator